**FILED**

**June 30, 2015**

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 12:09 PM



### COURT OF WORKERS' COMPENSATION CLAIMS
### DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE: Vestal Privette**

**EMPLOYER:  Privette Construction**

**INSURANCE CARRIER: Amtrust**

**DOCKET #: 2015-02-0013**
**STATE FILE #: 6007-2015**
**DATE OF INJURY: October 14, 2014**

### EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge on June 17, 2015, upon the Request for Expedited Hearing filed by Vestal Privette (Mr. Privette), the employee, on June 4, 2015, pursuant to Tennessee Code Annotated section 50-6-239 to determine if the employer, Privette Construction (PCON), is obligated to provide temporary disability and medical benefits.

Considering the applicable law, testimony of the witness, documentary evidence, argument of counsel and the technical record, this Court finds that Mr. Privette is entitled to the requested disabiliy and medical benefits.

### ANALYSIS

#### Issues

1.      Whether Mr. Privette suffered an injury that arose primarily out of and in the course and scope of employment with PCON.
2.      Mr. Privette's correct average weekly wage and compensation rate.
3.      Whether Mr. Privette is entitled to past or future medical benefits.
4.      Whether Mr. Privette is entitled to past or future temporary disability benefits.

#### Evidence Submitted

Mr. Privette testified telephonically.

The Court designated the following as the technical record:

* Petition for Benefit Determination
* Dispute Certification Notice
* Request for Expedited Hearing.

1

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings as allegations unless established by the evidence.

The Court admitted the following into evidence:

- Exhibit 1: First Reports of Injury (2 pages)
- Exhibit 2: Wage Statement (2 pages)
- Exhibit 3: Job Description (1 page)
- Exhibit 4: Medical Bills (4 pages)-marked for identification only
- Exhibit 5: Letter from Defense Counsel to Dr. Ariel Spencer (2 pages)
- Exhibit 6: Statement of Mr. Larry Privette (2 pages).
- Exhibit 7: Laughlin Memorial Hospital Medical Records (11 pages)
- Exhibit 8: 2014 W-2 form for Mr. Privette's work for PCON (1 page)
- Exhibit 9: Pay checks (6 pages)
- Exhibit 10: ESTU Physicians Medical Records (10 pages)
- Exhibit 11: Bank Envelopes (31 pages) marked only for identification
- Exhibit 12: Affidavit of Vestal Privette (4 pages)
- Exhibit 13: Affidavit of Larry Privette (2 pages).

### History of Claim

Mr. Privette worked as a saw man[1] for PCON. Larry Privette, Mr. Privette's brother, owns PCON.

On December 10, 2014, Mr. Privette worked all day cutting plywood for PCON. As he lifted a sheet of plywood into the rafters of the project home, he almost dropped the sheet. When Mr. Privette reached for the sheet, he felt pain in his abdomen. He finished his shift and went home but the pain continued.

Mr. Privette worked the next day and the pain worsened. That night at home, Mr. Privette's girlfriend noticed a lump in his groin. Mr. Privette worked the following day but experienced severe pain.

Mr. Privett, following his shift on December 12, 2015, told his brother that he was going to the hospital for his injury. His brother told him to go to the hospital but that it was too late to file a workers' compensation claim. Mr. Privette did not go to the hospital that day.

On December 14, 2014, Larry Privette called Mr. Privette and told him that he did not need him for work anymore. Mr. Privette reminded his brother that he needed medical treatment. Larry Privette told Mr. Privette to get medical attention, but he did not offer to pay for the treatment.

---

[1] A saw man cuts boards and sheets of wood to length.

On January 5, 2015, Mr. Privette called his brother and informed him he was going to the hospital and wanted his treatment paid for by workers' compensation. Larry Privette told Mr. Privette to go to the hospital but advised him it was too late to file a workers' compensation claim. January 5, 2015, was the last time the brothers spoke.

Mr. Privette sought medical treatment at Laughlin Memorial Hospital on January 5, 2015. Mr. Privette reported an injury at work lifting plywood. Dr. Annett Thomas diagnosed a left inguinal hernia and advised Mr. Privette to see his personal physician (Ex. 7, page 3).

Mr. Privette sought medical treatment with Dr. Ariel Spencer with ETSU Physicians on March 11, 2015. Dr. Spencer diagnosed a left inguinal hernia. He related the hernia to Mr. Privette's lifting incident in December 2014. Dr. Spencer recommended surgery to repair the hernia (Ex. 10, page 9).

On March 17, 2015, Attorney Fred Baker, defense counsel, wrote Dr. Spencer and requested his opinions on causation and Mr. Privette's work status following the injury (Ex. 5).

On April 9, 2015, Dr. Spencer replied to Attorney Baker's letter as follows:

> Based on the history I obtained from the patient and on physical exam I performed as his physician, I affirm within a reasonable degree of medical certainty that Vestal Privette suffered an injury by accident primarily out of and in the course and scope of his employment resulting in an inguinal hernia; and that this hernia appeared suddenly; and that this hernia was accompanied by pain; and that his hernia immediately followed the accident, and that his hernia did not exist prior to the accident for which compensation is claimed.
>
> In my opinion, Mr. Privette's hernia would have significantly affected his ability to work from the time of his injury to the present. Specifically, it would have limited his ability to lift any objects greater than 10 lbs [sic], and would have prevented any pushing, pulling lifting, bending, or stooping that involved strenuous exertion. He may have been able to work under restricted duty conditions that would not require any lifting > 10 lbs [sic], or any pushing, pulling, lifting, bending, or stooping that could involve strenuous exertion (Ex. 10, page 1).

Dr. Spencer further added that Mr. Privette's hernia would continue to limit his ability to work "…until it is surgically repaired." *Id.*

Mr. Privette testified that in the spring of 2014 he worked for his brother on several jobs for cash. He testified that his brother gave him the cash in bank envelopes but he did not know any of the dates PCON paid him cash. According to Larry Privette's affidavit, Mr. Privette worked for other individuals during 2014 as well. PCON submitted a wage statement for Mr. Privette showing that Mr. Privette only worked for PCON for eleven (11) weeks in 2014 and earned three thousand

3

nine-hundred thirty-eight dollars and eighty cents ($3,938.80). The wage statement included days in which Mr. Privette worked after his injury. According to the wage statement, Mr. Privette worked ten (10) weeks prior to the injury and earned three thousand four hundred and eighteen dollars and thirty-five cents ($3,418.30). Mr. Privette's 2014 W-2 from PCON shows he earned three thousand four hundred ninety-eight dollars ($3,498.00).

Mr. Privette's Petition for Benefit Determination (PBD) requested medical and temporary disability benefits. The parties did not reach an agreement on the issues.

## Mr. Privette's Contentions

Mr. Privette contends that he suffered a hernia at work on December 10, 2014, and that he continues to suffer from related symptoms. He asserts that PCON should pay for his treatment at Laughlin and with Dr. Spencer. Further, PCON should be required to pay for the surgery as recommended by Dr. Spencer.

Mr. Privette requests temporary disability benefits from December 16, 2014, to the present. He contends that he has not worked for anyone since December 15, 2014, the day his brother told him that he no longer needed him.

Mr. Privette contends that the cash payments his brother made to him should be included in his average weekly wage, but he acknowledges that he does not know when his brother paid him cash.

## PCON's Contentions

PCON asserts that Mr. Privette worked eleven (11) weeks for it in 2014. It asserts that Mr. Privette worked for other individuals during 2014 as well. PCON contends that work continued on the same project on which Mr. Privette alleges he was injured through May 2015. It avers that it did not tell Mr. Privette it no longer needed him. Instead, PCON claims it told Mr. Privette it did not need him the following week. It asserts that it could have provided light-duty work to Mr. Privette if he had requested it.

## Findings of Fact and Conclusions of Law

### Standard Applied

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). At an expedited hearing, an employee need not prove every element of his or her claim by a preponderance of the evidence in order to be eligible for benefits. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk Comp App Bd LEXIS 6, *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015); *cf. McCall v. Nat'l Health Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003). Instead, an employee must come forward with sufficient evidence from which the trial judge

4

could conclude that the employee is likely to prevail at a hearing on the merits. *Id.*

*Factual Findings*

The Court finds that Mr. Privette suffered a hernia while moving a sheet of plywood for PCON. The Court finds that Mr. Privette has not worked since December 15, 2014. The Court further finds that Mr. Privette has not worked for PCON because Larry Privette told him that he no longer needed him. The Court finds that Mr. Privette needs surgery to repair the hernia.

*Application of Law to Facts*

The first issue is whether Mr. Privette suffered an injury that arose primarily out of and in the course and scope of employment with PCON. An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes. Tenn. Code Ann. § 50-6-102(13)(B). For a hernia injury, an employee must also "definitely" prove "to the satisfaction of the court" that:

(1)  There was an injury resulting in hernia or rupture;
(2)  The hernia or rupture appeared suddenly;
(3)  It was accompanied by pain;
(4)  The hernia or rupture immediately followed the accident; and
(5)  The hernia or rupture did not exist prior to the accident for which compensation is claimed.

Tenn. Code Ann. § 50-6-212(a) (2014).

Here, Dr. Spencer, the only expert to address causation, opined that Mr. Privette's hernia, primarily arose out of and in the course and scope of employment and that the hernia satisfies each requirement of the provisions of Tennessee Code Annotated section 50-6-212. Mr. Privette testified that he suffered an injury lifting plywood at PCON and that the hernia appeared suddenly, and was accompanied by pain, which he reported to his brother. He further testified that his girlfriend noticed the hernia the following day. The medical records indicate that Mr. Privette did not have the hernia prior to the accident in question. Mr. Privette has presented sufficient evidence to prove that his hernia arose primarily out of and in the course and scope of his employment with PCON and is, therefore, likely to succeed at a hearing on the merits.

The second issue is Mr. Privette's correct average weekly wage and compensation rate. The parties presented opposing evidence and argument on this issue. Mr. Privette testified that PCON paid him cash but did not include the cash payments on his 2014 W-2. Mr. Privette did not have sufficient documentation to prove when he received the cash payments. Larry Privette, in his affidavit, asserted that Mr. Privette worked for PCON eleven (11) weeks in 2014. There is no evidence Mr. Privette worked for PCON in 2013. One of the eleven (11) weeks contains days Mr. Privette worked after his injury, thus the Court did consider that week in its calculation. Neither Mr. Privette nor PCON explained why Mr. Privette worked only during the weeks in question, other than

5

PCON's assertion that Mr. Privette worked for other individuals in 2014. There was no documentation from either party showing whether Mr. Privette worked for PCON the last three weeks of December 2013. PCON's numbers on the wage statement and W-2 form do not equate.

Typically, an employee's average weekly wages is determined by dividing an employee's earnings for the fifty-two (52) weeks prior to the injury by fifty-two (52). Tenn. Code Ann. § 50-6-102(3)(A) (2014). If an employee works less than fifty-two (52) weeks for an employer, the correct way to determine an employee's average weekly wage is to divide the employee's earnings by the number of weeks or parts of weeks the employee actually worked. Tenn. Code Ann. § 50-6-102(3)(B) (2014). The Court finds that Mr. Privette was a part-time employee of PCON in 2014. He worked for PCON and others. As a part-time employee, the Court will only consider the weeks Mr. Privette worked for PCON in calculating his average weekly wage. *McKinney v. Feldspar Corp.*, 612 S.W.2d 157, 160 (Tenn. 1981). Mr. Privette earned three thousand four hundred eighteen dollars and thirty cents ($3,418.30) during the ten (10) weeks he worked for PCON. Therefore, his average weekly wage is three hundred forty-one dollars and eighty-three cents ($341.83), and his compensation rate is two hundred twenty-seven dollars and eighty-nine cents ($227.89).

The third issue is whether Mr. Privette is entitled to past and future medical benefits. As stated previously, Mr. Privette provided sufficient evidence to prove he is likely to succeed on the merits. According to Tennessee Code Annotated section 50-6-204(a)(1)(A) (2014), an employer must provide, free of charge to the employee, medical benefits made reasonably necessary by accident. Larry Privette told Mr. Privette to seek medical care when he reported his injury. Mr. Privette sought medical treatment at Laughlin Hospital and at ETSU physicians. PCON, or its workers' compensation carrier, shall pay for all treatment associated with Mr. Privette's hernia injury that he received at Laughlin and ETSU physicians as required by the Workers' Compensation Law. PCON or its workers' compensation carrier shall also schedule and pay for the surgery made reasonably necessary by his injury.

The final issue is whether Mr. Privette is entitled to past and future temporary disability benefits. The temporary benefits in question are temporary partial disability (TPD) benefits because Dr. Spencer opined that Mr. Privette could work with restrictions. TPD benefits are sixty-six and two-thirds percent (66 2/3 %) of the difference between the average weekly wage of the worker at the time of the injury and the wage the worker is able to earn in the worker's partially disabled condition. *See* Tenn. Code Ann. § 50-6-207(2) (2014).

Here, the question is whether PCON offered Mr. Privette light duty work after the accident or told him not to come back to work. The Court finds Mr. Privette's testimony more persuasive than Larry Privette's affidavit on this issue. The Court finds that Larry Privette told Mr. Privette that he no longer needed him. This finding is confirmed by the fact that Larry Privette never called Mr. Privette to offer him light duty work as Mr. Privette testified that he had not spoken to his brother since January 5, 2015.

Since Mr. Privette has not worked since December 15, 2015, due to his injury, PCON must pay him temporary partial disability benefits in the amount of six thousand four hundred thirteen dollars and forty-eight cents ($6,413.48). This amount represents the period of twenty-eight (28)

weeks and one (1) day from December 16, 2014, until June 30, 2015. TPD benefits cannot be computed into the future. However, PCON or its carrier shall pay appropriate temporary partial or temporary total disability benefits (once Mr. Privette has the hernia surgery) as they accrue.

**IT IS, THEREFORE, ORDERED** as follows:

1. PCON or its workers compensation carrier shall provide medical benefits according to Tennessee Code Annotated section 50-6-204, including payment of all prior medical treatment at Laughlin Hospital and ETSU Physicians, and shall schedule the hernia surgery recommended by Dr. Spencer. Mr. Privette shall provide PCON or its workers' compensation carrier copies of all medical bills.

2. The amount of temporary disability benefit is two hundred twenty-seven dollars and eighty-nine cents ($227.89) per week based on Mr. Privette's average weekly wage of three hundred forty-one dollars and eighty-three cents ($341.83).

3. That PCON or its workers' compensation carrier shall pay Mr. Privette six thousand four hundred thirteen dollars and forty-eight cents ($6,413.48) in past temporary partial disability benefits for the period from December 16, 2014, through June 30, 2015, and shall continue to pay appropriate temporary benefits as they accrue.

4. This matter is set for an Initial Hearing on August 26, 2015, at 2:00 p.m. Eastern time

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 30th day of June 2015.**

**BRIAN K. ADDINGTON**
**Workers' Compensation Judge**

Initial Hearing:

7

An Initial Hearing has been set with Judge Brian K. Addington, Court of Workers' Compensation Claims. You must call 865-594-6538 or toll free at 855-543-5044 to participate in the Initial Hearing.

Please Note: You must call in on August 26, 2015, at 2:00 p.m. Eastern Time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (ET).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 30th day of June, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Mail/Email Address |
|------|----------------|------------------|---------|------------|-----------|--------------------|
| **Vestal Privette** | X | X | | | | **137 Union Church Road Jonesborough, TN 37659** |

8

| E. Harrison, Esq. | | | | | x | eharrison@wimberlylawson.com |
|---|---|---|---|---|---|---|

PENNY SHRUM
CLERK OF THE COURT
WC.COURT.CLERK@tn.gov

9